IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT McMAHON and KAREN JOHN,
individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.                                            Civil Action No. 5:11CV34
                                                                              (STAMP)
ADVANCE STORES COMPANY INCORPORATED
d/b/a ADVANCE AUTO PARTS
and DONN FREE,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND**

I.   Background

Currently before this Court is a second motion to remand by the plaintiffs, Scott McMahon ("McMahon") and Karen John ("John"). The issues are similar to those addressed by this Court in the first motion to remand, and include: (1) whether the notice of removal was timely filed by the defendants, Advance Store Company, Inc., d/b/a Advance Auto Parts ("AAP") and Donn Free ("Free"); and (2) whether this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

The controversy concerns a warranty on a battery which McMahon purchased from AAP in Wheeling, West Virginia, and which he subsequently sold to John. The plaintiffs allege that within the warranty period, the battery failed. According to the plaintiffs, when John invoked the warranty and attempted to obtain a refund or

replacement thereunder, Free, acting as AAP's agent, refused to honor it because AAP policy was to limit warranties to original purchasers. Free claimed that John, as a subsequent purchaser, was not eligible to benefit from the warranty.

On August 30, 2006, McMahon filed a complaint in the Circuit Court of Ohio County, West Virginia. The original complaint included claims for breach of express and implied warranties, violations of West Virginia consumer protection laws, fraud, and unjust enrichment. After the plaintiffs amended the complaint to include a class action claim, the defendants removed the action, invoking this Court's jurisdiction under CAFA.

The plaintiffs then filed a motion to remand, which this Court granted on January 28, 2008 after concluding that the defendants had failed to carry their burden of showing by a preponderance of the evidence that the jurisdictional amount in controversy had been met. After this Court issued its memorandum opinion and order granting the plaintiffs' motion for remand, the case proceeded in the Circuit Court of Ohio County. On January 31, 2011, the plaintiffs sought, and were granted, leave to amend their complaint again in order to add a claim under the Magnusson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq. After the defendants were served with the third amended complaint, they once again filed a notice of removal.

On March 22, 2011, the plaintiffs filed a second motion to remand, arguing that the defendants' removal is untimely and that this Court lacks subject matter jurisdiction because the amount in controversy does not meet CAFA's statutory minimum.[1] The plaintiffs also argue that § 2310(d) of the MMWA disallows jurisdiction of this case in federal court because the number of named plaintiffs is less than one hundred. Again, the plaintiffs argue that even if this civil action does meet the threshold jurisdictional requirements under CAFA, this Court must decline to exercise jurisdiction because the case satisfies the CAFA's "local controversy" exception pursuant to 28 U.S.C. § 1332(d)(4). The defendants responded in opposition, arguing that removal was timely; that the jurisdictional requirements are met; and that CAFA's "local controversy" exception does not apply to the facts of this case. The plaintiffs filed a timely reply.

The plaintiffs' second motion to remand is now ripe for review. After considering the parties' briefs and the applicable law, this Court finds that the plaintiffs' second motion to remand this action must be granted for the reasons stated below.

---

[1] The plaintiffs are citizens of West Virginia. Defendant AAP is a Virginia business corporation with its principal place of business in Roanoke, Virginia. Defendant Free is a citizen of West Virginia.

## II. Applicable Law

### A. Procedural Requirements

The procedure for removal is governed by 28 U.S.C. § 1446. Section 1446 provides, in relevant part:

> (a) A defendant . . . desiring to remove any civil action . . . from a State court shall file in the district court . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant . . . in such action.
>
> (b) . . . If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446 (a),(b). In cases where a plaintiff files a motion for leave to file an amended complaint, and the proposed amended complaint enables a defendant to ascertain that the case has become removable, the thirty-day period does not begin until the state judge has assented to the motion. Hibbs v. Consolidation Coal Co., 842 F. Supp. 215, 217 (N.D. W. Va. 1994).

### B. Subject Matter Jurisdiction

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. The CAFA confers original jurisdiction on district courts over class actions in which any member of a class comprised of at least one hundred

4

plaintiffs is of diverse citizenship from any defendant and in which the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(d). The claims of individual class members may be aggregated to meet the $5,000,000.00 amount in controversy. 28 U.S.C. § 1332(d)(6).

Generally, the party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). The Fourth Circuit has held "while CAFA was intended to open the doors of the federal courts to class action litigants, its statutory language did nothing to reverse the long-settled principle that a defendant seeking to invoke a federal court's removal jurisdiction bears the burden of demonstrating that jurisdiction would be proper." Bartnikowski v. NVR, Inc., 307 F. App'x 730, 734 (4th Cir. 2009) (citing Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008)). Therefore, in this case, the burden of establishing the $5,000,000.00 jurisdictional threshold amount in controversy rests with the defendants. See Mulcahey, 29 F.3d at 151. This Court has consistently applied the "preponderance of evidence" standard to determine whether a removing defendant has met its burden of proving the amount in controversy. The well-settled test in the Fourth Circuit for calculating the amount in controversy is "'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th

Cir. 2002) (quoting Gov't Employees Ins. Co. v. Lally, F.2d 568, 569 (4th Cir. 1964)). Accordingly, in this case, the defendants must show by a preponderance of the evidence that the pecuniary interest, in the aggregate, of either party is greater than $5,000,000.00.

Even if CAFA's threshold jurisdictional requirements are met, however, remand is required where the case meets certain exceptions. 28 U.S.C. § 1332(d)(4). Title 28, United States Code, Section 1332(d)(4) provides:

> (4) A district court must decline to exercise jurisdiction . . .
>
> (A)(i) over a class action in which --
>
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant --
>
> (aa) from whom significant relief is sought by members of the plaintiff class;
>
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C.A. § 1332(d)(4).

Removal jurisdiction is strictly construed. If federal jurisdiction is doubtful, the federal court must remand. Mulcahey, 29 F.3d at 151.

### III. Discussion

#### A. Timeliness of Removal

In their motion to remand, the plaintiffs argue that the defendants' notice of removal is untimely. According to the plaintiffs, the defendants' basis for removal is the same as was raised during the 2007 removal -- CAFA. Because the second amended complaint, not the third, was the first pleading to set forth the CAFA claim, the plaintiffs contend that the defendants were required to file their notice of removal within thirty days of the receipt of the second amended complaint, which was filed on August 13, 2007.[2] The plaintiffs claim that the thirty-day period cannot be considered to run from the date of the filing of the third amended complaint -- January 31, 2011.

In response, the defendants contend that because the plaintiffs amended their complaint to state an entirely new cause of action under the MMWA, the notice of removal was timely filed

---

[2]The second amended complaint was filed on August 7, 2007 and was received by the defendants no later than August 13, 2007.

7

within thirty days after the receipt by the defendants of the third amended complaint.

Title 28, United States Code, Section 1446(b) provides, in pertinent part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). In their notice of removal, the defendants identify the MMWA claim as the new cause of action upon which their removal is based. (Notice of Removal ¶ 8.) However,

> Section 1446(b) does not give a defendant a new opportunity to file a notice of removal every time the plaintiff amends his complaint to state a new claim against the defendant. Rather, a defendant must file its notice of removal within thirty days of first learning of the grounds for removing the entire case.

Wingfield v. Franklin Life Ins. Co., 41 F. Supp. 2d 594, 598-99 (E.D. Va. 1999). But a new civil action may be commenced under CAFA when claims are added in an amended complaint. "'[W]hen a claim relates back to the original complaint (and hence is treated as part of the original suit),' it does not commence a new suit, but when a claim is 'sufficiently independent of the original contentions[,] . . . it must be treated as fresh litigation.'" Admiral Ins. Co. v. Abshire, 574 F.3d 267, 274 (5th Cir. 2009) (quoting Knudsen v. Liberty Mut. Ins. Co., 411 F3d 805, 807 (7th Cir. 2005)). Rule 15 of the West Virginia Rules of Civil Procedure

provides that "the amended complaint relates back to the date of filing when: a) there is no essential change in the cause of action;. . . and c) the adverse party is not prejudiced by the assertion of the amendment." Huffman v. Criner, 624 S.E.2d 544, 546 (W. Va. 2005).

In this case, the defendants first removed the case based upon the class action claims included in the plaintiffs' second amended complaint. But prior to the filing of the third amended complaint, the defendants were not on notice of a MMWA claim and would therefore be prejudiced in maintaining a defense on the merits if this claim were viewed as relating back to the original complaint. Thus, this Court concludes that the MMWA claim does not relate back. Because the third amended complaint sets forth a new cause of action for class relief under the MMWA, the defendants' notice of removal was timely as it was filed within thirty days of the filing of the third amended complaint.

B. <u>Subject Matter Jurisdiction</u>

The second argument presented by the plaintiffs in their motion to remand is that the defendants have not satisfied the burden of proof as to the amount in controversy requirement of 28 U.S.C. § 1332(6). Specifically, the plaintiffs allege that the defendants inaccurately define the putative class. Correcting the defendants, the plaintiffs reiterate that the class remains "those improperly denied warranty rights for a defective product." (Mem.

in Supp. of Mot. to Remand 10.)  The plaintiffs point to this Court's 2008 opinion granting remand in support of their contention that the defendants' definition of the putative class is overly broad.

In response, the defendants claim that the putative class constitutes more than the requisite one hundred members and the alleged aggregate damages exceed $5,000,000.00.  Specifically, the defendants argue that the MMWA claim supports a class comprised of all consumers who have been issued a sales receipt by the defendants referring the consumer to warranty information available on Advance's website or elsewhere. (Defs.' Mem. in Opp'n 12.)  The defendants offer the affidavit of Jeffrey W. Fralin as evidence establishing the total number of sales transactions at West Virginia Advance Auto Parts stores and that each such sales transaction was accompanied by a sales receipt that referenced the warranty.  Because the number of consumers is so large, by multiplying the number of potential class members by the damages asserted per class member, the defendants claim that the damages far exceed the $5,000,000.00 jurisdictional threshold.[3]

---

[3]The defendants consider the plaintiffs' CCPA claim, which would allow them to recover actual damages or $200.00, whichever is greater.  W. Va. Code. § 46A-6-106.  By multiplying $200.00 by the number of potential class members, 19,857,409, the defendants argue that damages equal approximately $3,971,481,800.00.  (Defs.' Mem. in Opp'n 18-19.)

Given the parties' arguments presented above, the remand decision seems to hinge upon how the class is defined. In determining the amount in controversy for federal diversity jurisdiction, the court must examine the complaint at the time of removal. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal."). Further, it is well established that "the plaintiff is the master of his complaint." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996); see also Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) ("CAFA does not change the proposition that the plaintiff is the master of her own claim."). Thus, this Court looks to the plaintiff's third amended complaint to identify the putative class and to determine the amount in controversy.

The third amended complaint does not specify damages. The defendants calculated damages by first concluding that the putative class consists of "all persons who received a sales receipt referring the consumer to warranty information available on Advance's website or elsewhere, with a purchase from Advance." (Notice of Removal ¶ 18.) Because approximately 19,857,409 sales transactions took place in West Virginia Advance stores over the course of the past four years, the defendants contend that this is the number of people in the putative class. Then, because a consumer may seek relief for violations of the West Virginia

Consumer Protection Act ("CPPA") in the amount of actual damages or $200.00, the defendants multiple these numbers and conclude that the damages in this case exceed $3 billion. W. Va. Code. § 46A-6-106.

This Court finds the defendants' definition of the class to be overly broad. The plaintiffs third amended complaint describes the putative class as "others similarly situated and other West Virginia consumers [who] have been denied the protections of the warranties for products purchased in violation of West Virginia law." (Third Am. Compl. ¶ 8.) A common sense reading reveals that the class does not include all consumers who made a purchase from Advance and received a receipt referencing the warranty, as the defendants suggest, but instead is limited to those consumers who purchased defective products from Advance and were then denied the protection of the warranty. If this Court were to adopt the defendants' definition, the class would arguably include consumers who purchased defective products from Advance and never took advantage of the warranty, or who successfully took advantage of the warranty. Under the defendants' definition, the class would also consist of consumers who did not purchase defective products from Advance. After examining the third amended complaint, this Court finds that the putative class includes those consumers who were improperly denied warranty claims on a defective product purchased from Advance. As in the defendants' first notice of

removal, their estimates concerning potential damages encompass putative claims that fall beyond the plaintiffs' class complaint.

Not only do the defendants misdefine the class, but this Court again finds their evidence to be infirm and concludes that the defendants have failed to meet their evidentiary burden regarding the amount in controversy. Once again, the defendants rely largely on assumptions and estimated sales figures in calculating the amount of damages in this case. In support of their calculations, the defendants offer only the affidavit of Jeffrey Fralin, who approximates the total sales transactions for West Virginia Advance Auto Parts stores and confirms that these transactions were accompanied by sales receipts that refer to the warranty. (Fralin Aff. ¶¶ 4-5.) Fralin does not discuss, however, the number of consumers who were improperly denied warranty claims on a defective product purchased from Advance.

The defendants cite to Lewis v. Ford Motor Co., 610 F. Supp. 2d 476 (W.D. Pa. 2009), in support of their argument that the amount in controversy has been satisfied, but unlike Lewis, the complaint in this case is more precise. In Lewis, the allegations in the complaint and the defendant's evidence regarding the number of vehicles in question enabled the court to determine the approximate number of members in the putative class and the dollar amount per claim. Id. at 486-88. Thus, the court could conclude that the defendant had established damages of at least

$5,000,000.00.  Id. at 488.  In this case, however, the putative class, as defined in the third amended complaint, is less expansive -- it is limited to those consumers who have been denied the protections of the warranties for defective products purchased from Advance.  But the affidavit submitted by the defendants offers no help in determining the exact size of the class.  Instead, it simply lists the total sales transactions.  Calculating the figures used in the simple multiplication operation in Lewis requires much more speculation in this case.

Similarly, the complaint in Newport v. Dell, No. CIV 08-096, 2008 WL 2705364 (D. Ariz., July 2, 2008), another case cited by the defendants, is also more broad than the complaint in this case.  In Newport, the plaintiff's complaint alleges that the class consists of "all persons in the State of Arizona who have purchased desktop or notebook systems manufactured by Dell and who also received a warranty from Defendants."  Id. at *6.  The defendants in Newport could rely on the total number of extended warranties issued to consumers multiplied by the plaintiff's damages estimates to determine that the amount in controversy exceeds $5,000,000.00. Id.  The case before this Court, however, can be distinguished from Newport in that the class described in the third amended complaint is more limited.

This Court concludes that the defendants' calculations, based as they are upon unfounded assumptions and ill-defined estimates

for a class that they incorrectly define, cannot be deemed reliable bases for calculating the amount in controversy in this case. See Bartnikowski, 307 F. App'x at 739 (holding that the defendant's calculations were too speculative and that the record was too bare to allow for a reasonable estimate of the amount in controversy); Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006) (holding that the district court did not err when it found that "great uncertainty" remained about the amount in controversy and resolved that uncertainty in favor of remand). Consequently, the defendants have not demonstrated by a preponderance of the evidence that the pecuniary result to either party which a judgment would produce exceeds $5,000,000.00, exclusive of interests and costs. The amount in controversy has not been satisfied, and this Court, therefore, lacks subject matter jurisdiction.[4]

C. Local Exception Controversy

Having determined that it lacks subject matter jurisdiction, this Court need not, and does not, address whether the local controversy exception to CAFA applies.

IV. Conclusion

For the reasons stated above, this Court concludes that the defendants have failed to carry their burden of showing by a

---

[4]This Court notes that a CAFA defendant who cannot meet his burden for removal may still have recourse to the federal courts later, as Congress has eliminated the one-year time limit on CAFA removal actions. See 28 U.S.C. § 1453(b); Bartnikowski, 307 F. App'x at 739.

preponderance of evidence that the jurisdictional amount in controversy has been met. Therefore, this Court lacks subject matter jurisdiction over this action. Accordingly, the plaintiffs' motion to remand is GRANTED and it is ORDERED that this civil action be REMANDED to the Circuit Court of Ohio County, West Virginia.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Circuit Court of Ohio County, West Virginia. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: May 24, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE